# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00589-COA

**WILLIAM STEVE CROWLEY A/K/A STEVE CROWLEY**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/29/2024 |
| TRIAL JUDGE: | HON. KENT E. SMITH |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/03/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND WEDDLE, JJ.**

**WEDDLE, J., FOR THE COURT:**

¶1.     A Chickasaw County Circuit Court jury found William Steve Crowley guilty of one count of conspiracy, one count of burglary of a dwelling, and one count of grand larceny. After finding that Crowley was a non-violent habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2020), the Chickasaw County Circuit Court ordered Crowley to serve the following sentences concurrently in the custody of the Mississippi Department of Corrections (MDOC): (1) five years for conspiracy, (2) twenty-five years for burglary of a dwelling, and (3) five years for grand larceny.  On appeal, Crowley argues that

the Chickasaw County Circuit Court erred by sentencing him as a habitual offender. Finding no error, we affirm.

**FACTS**

¶2. Pursuant to a multi-count indictment, a Chickasaw County grand jury indicted Crowley for one count of each of the following: conspiracy, burglary of a dwelling, grand larceny, and possession of a stolen firearm. The State filed a notice of eligibility for enhanced punishment as a non-violent habitual offender based on Crowley's prior convictions of uttering a forgery in Calhoun County and possession of cocaine in Clay County. Prior to trial, the State dismissed Crowley's indicted count for possession of a stolen firearm. Following a trial on the remaining three counts, the jury found Crowley guilty of conspiracy, burglary of a dwelling, and grand larceny.

¶3. At Crowley's sentencing hearing, the prosecutor explained that after filing the notice of eligibility for enhanced punishment, the State learned Crowley's prior charge for cocaine possession had been resolved in Crowley's favor. As a result, the State intended to present evidence regarding only two of Crowley's prior convictions in Calhoun County for uttering a forgery. The State entered into evidence Crowley's multi-count indictment, his "Plea of Guilty and Judgment of the Court," and his amended notice of criminal disposition.

¶4. Crowley's indictment reflected that a Calhoun County grand jury had indicted him in 1997 for four counts of uttering a forgery. Each count stated that on January 17, 1997, Crowley presented a fraudulent check to an employee at either the Piggly Wiggly in Calhoun City, Mississippi, or the Ward's Quick Stop in Vardaman, Mississippi. Each check was in

2

the amount of $250 but made payable to a different recipient. Crowley pled guilty to three of the counts charged in the 1997 indictment, and the Calhoun County Circuit Court sentenced him to serve five years for each count, with all three sentences to be served concurrently in MDOC's custody.

¶5.     During Crowley's sentencing hearing before the Chickasaw County Circuit Court, the State offered proof of two of Crowley's prior convictions—one conviction for uttering a forgery at the Piggly Wiggly in Calhoun City, and one conviction for uttering a forgery at the Ward's Quick Stop in Vardaman. The State called Investigator Pammie Davidson to testify. Investigator Davidson stated that she had worked with the District Attorney's Office on Crowley's present case and had discovered his 1997 multi-count indictment and his convictions for the three counts of uttering a forgery. Investigator Davidson testified that Crowley's convictions in 1997 stemmed from events that occurred on the same day and involved two businesses. Investigator Davidson further testified, though, that the Piggly Wiggly in Calhoun City and the Ward's Quick Stop in Vardaman were not located right next to one another. Instead, Investigator Davidson explained that the two businesses were located about ten to fifteen minutes away from each other.

¶6.     The State argued that "[t]here would have been sufficient time between leaving either the Ward's Quick Stop in Vardaman and going to Piggly Wiggly in Calhoun City or vice versa for [Crowley's] criminal passions to have cooled so that he had time to reflect." As a result, the State asserted that even though Crowley's prior convictions were "on the same indictment" and "occurred on the same day, . . . they qualify as separate incidences under

3

[section] 99-19-81 and . . . [Crowley] should be convicted as a habitual offender."

¶7. Based on the evidence presented, the Chickasaw County Circuit Court agreed that Crowley's prior felony convictions arose from two separate incidents that occurred at different times. Concluding that Crowley's two prior felony convictions met the statutory requirements to enhance Crowley's sentence, the Chickasaw County Circuit Court sentenced Crowley as a non-violent habitual offender to serve concurrent sentences in MDOC's custody of five years for conspiracy, twenty-five years for burglary of a dwelling, and five years for grand larceny. Crowley moved unsuccessfully for judgment notwithstanding the verdict or, alternatively, a new trial. Aggrieved, Crowley appeals.

**DISCUSSION**

¶8. On appeal, Crowley argues that the Chickasaw County Circuit Court erred by finding that his two prior felony convictions satisfied the statutory requirements to sentence him as a habitual offender. Crowley contends there was insufficient evidence to support the Chickasaw County Circuit Court's finding that his prior felony convictions arose from separate incidents at different times. Alternatively, based on the United States Supreme Court's holding in *Erlinger v. United States*, 602 U.S. 821 (2024), Crowley asserts that "the determination of whether his prior convictions arose out of separate incidents at different times [was] a question that should have been submitted to a jury" because the question "goes beyond the fact that the prior convictions exist and requires a finding about the circumstances surrounding the crimes."

**I. Sufficiency of the Evidence**

4

¶9. In reviewing Crowley's challenge to the sufficiency of the evidence, this Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of [s]ection 99-19-81 beyond a reasonable doubt." *Manuel v. State*, 357 So. 3d 633, 639 (¶20) (Miss. 2023) (quoting *Brent v. State*, 296 So. 3d 42, 52 (¶41) (Miss. 2020)). To be sentenced as a non-violent habitual offender, section 99-19-81 requires Crowley to "have been convicted twice previously of any felony or federal crime upon charges separately brought and *arising out of separate incidents at different times* and . . . sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere . . . ." Miss. Code Ann. § 99-19-81. The Mississippi Supreme Court has held that the events surrounding a defendant's two prior felony convictions "should be sufficiently separate that the offender's criminal passions may have cooled so that he has time to reflect." *Manuel*, 357 So. 3d at 640 (¶21) (quoting *Pittman v. State*, 570 So. 2d 1205, 1206 (Miss. 1990)).

¶10. In reviewing the facts of prior caselaw, the Mississippi Supreme Court noted that

> in *Pittman*, this Court found that breaking into two different schools met the statutory requirement of separate incidents at different times. [*Pittman*, 570 So. 2d at 1206]. Even though the crimes were committed on the same day, the schools were close together, and the schools had "common use of the auditorium and cafeteria," the fact that the crimes involved burglarizing two separate buildings was sufficient. *Id.* Similarly, in *Burt v. State*, 493 So. 2d 1325, 1329 (Miss. 1986), this Court found that breaking and entering two separate dwelling houses met the requirement of separate incidents at different times even though the acts were done on the same day and at the same address.

*Id.* at (¶22).

¶11. Unlike in *Pittman* and *Burt*, the record in *Manuel* contained no facts regarding the

5

commission of the underlying felonies and merely showed that Manuel had pled guilty to two charges of selling hydrocodone. *Id.* at (¶23). As a result, the Mississippi Supreme Court concluded that it could not "determine whether [Manuel's] drug sales occurred in rapid succession, which would 'not suggest the same repetitiveness of criminal design such that the offender may be thought predictably habitual thereafter,' or whether the sales occurred on different days or in different locations[,]" which could demonstrate that "the defendant's convictions were sufficiently separate . . . ." *Id.* (quoting *Pittman*, 570 So. 2d at 1206).

¶12.    Crowley argues that the facts of his case more closely align with those presented in *Manuel*, but we disagree. Despite Crowley's assertions, the record contains sufficient evidence to support the Chickasaw County Circuit Court's finding that his two prior felony convictions of uttering a forgery satisfied the statutory requirements for enhancing his sentence as a non-violent habitual offender. Even though Crowley committed both counts of uttering a forgery on the same day, he presented the checks to two separate businesses located about ten to fifteen minutes away from one another in two different towns. Upon review, we find these circumstances were sufficient to demonstrate that Crowley's underlying convictions of uttering a forgery arose "out of separate incidents at different times" as mandated by section 99-19-81. The time required for Crowley to drive from one business to the other was enough to allow his "criminal passions [to cool] so that he ha[d] time to reflect" before committing an additional count of uttering a forgery. *Manuel*, 357 So. 3d at 640 (¶21) (quoting *Pittman*, 570 So. 2d at 1206).

¶13.    In addition, the record reflects that after Crowley pled guilty to three counts of uttering

6

a forgery, the Calhoun County Circuit Court sentenced him to serve five years for each count, with each sentence to be served concurrently in MDOC's custody. Thus, Crowley was also "sentenced to [two] separate terms of one (1) year or more in any state and/or federal penal institution" as required by section 99-19-81. We therefore find no error regarding the sufficiency of the evidence supporting the Chickasaw County Circuit Court's decision to enhance Crowley's sentence under section 99-19-81.

## II. Applicability of *Erlinger*

¶14. Alternatively, Crowley argues that the United States Supreme Court's decision in *Erlinger* requires a jury (rather than the circuit court) to determine if his prior felony convictions for uttering a forgery occurred on separate occasions or during one criminal episode. In *Erlinger*, the defendant pled guilty to being a felon in possession of a firearm, which carried a maximum prison sentence of ten years. *Erlinger*, 602 U.S. at 825-26. At sentencing, however, the district court judge determined that Erlinger was eligible for an enhanced sentence under the Armed Career Criminal Act (ACCA), which "impose[d] lengthy mandatory prison terms on certain defendants who ha[d] previously committed three violent felonies or serious drug offenses on separate occasions." *Id*. The application of the ACCA to Erlinger's conviction increased the maximum ten-year sentence he had faced to a minimum of fifteen years and a new maximum term of life imprisonment. *Id.* at 825.

¶15. Not long after Erlinger's sentencing, the United States Court of Appeals for the Seventh Circuit "issued decisions indicating that two of the three offenses on which the district court had relied" in sentencing Erlinger no longer qualified under the ACCA. *Id.* at

7

826. During Erlinger's new sentencing hearing, the prosecutors relied on a different set of prior convictions to invoke the ACCA. *Id.* Erlinger had accumulated four prior convictions of burglarizing multiple businesses over several days. *Id.* at 826-27. The prosecutors contended that Erlinger's prior burglary convictions "each could serve as an ACCA predicate and collectively . . . support an ACCA sentence." *Id.* at 827. Erlinger asserted, however, that he had committed his prior burglaries during a single criminal episode rather than on separate occasions and that the crimes therefore failed to satisfy the requirements for applying the ACCA. *Id.* Moreover, Erlinger argued that he was entitled to have a jury assess the facts surrounding his prior offenses and determine if the burglaries occurred on separate occasions or during one criminal episode. *Id.*

¶16. After denying Erlinger's request for a jury, the district court judge concluded that Erlinger's prior burglaries had occurred on separate occasions and constituted ACCA-qualifying offenses. *Id.* As a result, the district court judge once again sentenced Erlinger to fifteen years in prison. *Id.* The United States Supreme Court granted Erlinger's petition for certiorari after the Seventh Circuit Court of Appeals affirmed his sentence. *Id.* at 828.

¶17. On appeal, the *Erlinger* Court emphasized that "[o]nly a jury may find 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed.'" *Id.* at 833 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). The Court explained the principle "does not just apply when a judge seeks to issue a sentence that exceeds the *maximum* penalty authorized by a jury's findings (or a guilty plea). It is a principle that also applies when a judge seeks to increase a defendant's *minimum* punishment." *Id.* In

8

Erlinger's case, "the sentencing court's factual finding that [his] offenses occurred on at least three separate occasions had the effect of increasing *both* the maximum and minimum sentences he faced." *Id.* at 835. Thus, the *Erlinger* Court concluded that for purposes of applying the ACCA to increase a punishment, the defendant is entitled to have a jury (rather than the trial court judge) engage in the fact-finding inquiry necessary to determine if the defendant's previous offenses occurred during a single episode or on separate occasions. *Id.* "While recognizing [that] Erlinger was entitled to have a jury resolve [the] ACCA's occasions inquiry unanimously and beyond a reasonable doubt," the Court emphasized that it was "decid[ing] no more than that" single question. *Id.*

¶18. Here, the State disputes Crowley's contention that *Erlinger* applies to his sentencing as a non-violent habitual offender. The State argues that the holding in *Erlinger* "applies only to statutes that increase the mandatory minimum or maximum sentence, and Mississippi's non-violent habitual[-]offender statute does neither." As amended in 2018, section 99-19-81 no longer *mandates* an increased minimum sentence. Instead, section 99-19-81 requires a court to sentence a non-violent habitual offender "to the maximum term of imprisonment prescribed for such felony unless the court provides an explanation in its sentencing order setting forth the cause for deviating from the maximum sentence, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation." Miss. Code Ann. § 99-19-81. Thus, the State notes that rather than increasing a "crime's punishment beyond the statutory maximum" sentence, section 99-19-81 "simply eliminates eligibility for parole or early release." And as the Mississippi Supreme Court has

9

held, a limitation on a defendant's parole or early release "only impact[s the defendant's] actual time to serve *and not his sentence*." *Fogleman v. State*, 283 So. 3d 685, 691 (¶20) (Miss. 2019) (emphasis added).

¶19. Unlike in *Erlinger*, where the application of the ACCA impacted the defendant's actual sentence by increasing the minimum and maximum punishments to be imposed, Crowley's sentencing under section 99-19-81 did not increase the sentencing range he faced. Rather, as in *Fogleman*, Crowley's sentencing as a non-violent habitual offender only affected the portion of the prescribed sentence that he was to serve. *See* Miss. Code Ann. § 99-19-81. Accordingly, we find no merit to Crowley's claims that the United States Supreme Court's holding in *Erlinger* applies to his sentencing under section 99-19-81.

## CONCLUSION

¶20. Because we find no error in the circuit court's decision to sentence Crowley as a non-violent habitual offender under section 99-19-81, we affirm Crowley's convictions and sentences.

¶21. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND LASSITTER ST. PÉ, JJ., CONCUR.**